**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0442n.06
Filed: June 27, 2006

**No. 03-2623**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NEOPRENE CRAFTSMEN UNION LOCAL 788, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE NATIONAL |
| | ) | LABOR RELATIONS BOARD |
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| DUPONT DOW ELASTOMERS, L.L.C., | ) | |
| | ) | |
| Intervenor. | | |

Before: SILER, BATCHELDER, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge. Petitioner Neoprene Craftsmen Union (the "Union") petitions for review of an order of the National Labor Relations Board (the "Board") denying the Union's request for review of a compliance determination issued by the Board's Regional Director and affirmed by the Board's General Counsel. For the following reasons, the petition is DENIED.

**BACKGROUND**

This case arises out of a compliance proceeding enforcing the Board's prior determination that Dupont Dow Elastomers ("DDE") had committed unfair labor practices in violation of the National Labor Relations Act ("NLRA"). *See Dupont Dow Elastomers*, 332 NLRB 1071, 1071-73 (2000). The unfair labor practices claim arose out of a merger between Dupont and Dow Chemical

Company that created a joint venture known as DDE. DDE, among other things, was to take over production of neoprene at the Dupont facility in Louisville. While DDE decided to extend offers of employment to almost all of the employees at the Louisville plant, it refused to recognize or bargain with the Union, which represented all of the workers at Dupont's Louisville neoprene production facility. The Union promptly filed suit alleging that DDE, as an alter ego of Dupont, or alternatively, as a perfectly clear successor, was committing unfair labor practices. Ultimately, the Board found DDE to be a perfectly clear successor of Dupont and held that it had engaged in unfair labor practices. *Id.* at 1075-76. As a remedy, the Board ordered DDE to: (1) cease and desist from its refusal to recognize and bargain with the Union; (2) "rescind the changes in employment terms made on April 1, 1996"; and (3) "make whole all unit employees for any loss of wages and other benefits suffered." *Id.* at 1076. We affirmed the Board's decision on appeal. *See Dupont Dow Elastomers, Inc. v. N.L.R.B.*, 296 F.3d 495 (6th Cir. 2002).

The case was then sent to a compliance proceeding before the Board's Regional Director in order to more specifically enforce the prior Board order. During this proceeding, the Union argued that its members were entitled to certain backpay and other monetary awards because of several unilateral changes DDE made to the terms of employment. DDE, on the other hand, contended that these alleged unilateral changes were unlitigated unfair labor practice claims that the Union had failed to assert in the original Board proceeding. Finding that much of the conduct alleged by the Union during the compliance proceedings had not been litigated in front of the Board in the prior decision, the Regional Director determined that a cease and desist order was the appropriate remedy and denied the Union's request for monetary relief. The Regional Director found that the "only

unilateral change in established terms and conditions of employment" proven during the prior proceeding was the addition of a success sharing program and therefore no backpay or other monetary award was in order given that this change did not result in any loss of pay or benefits. The Union appealed this decision to both the Board's General Counsel and the Board and was denied in both instances. The Union now petitions this court for review of the Board's decision, arguing that the prior order in fact dealt with unilateral changes other than success sharing and therefore the Board abused its discretion in issuing solely a cease and desist order as a remedy.

## STANDARD OF REVIEW

We have repeatedly stated that the "Board's remedial authority is a 'broad discretionary one, subject to limited judicial review.'" *Taylor Warehouse Corp. v. N.L.R.B.*, 98 F.3d 892, 903 (6th Cir. 1996) (citation omitted). Therefore,

> [o]ur review is circumscribed by the principle that a remedial order of the Board will not be disturbed unless the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the NLRA. The deference necessarily accorded to remedial orders stems from the Board's primary responsibility and broad discretion to devise remedies for NLRA violations.

*Adair Standish Corp. v. N.L.R.B.*, 912 F.2d 854, 864 (6th Cir. 1990) (internal quotations, alterations, and citations omitted). Furthermore, courts have "long recognized the Board's normal policy of modifying its general [remedial orders] in subsequent compliance proceedings as a means of tailoring the remedy to suit the individual circumstances of each discriminatory charge." *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 902 (1984) (citations omitted).

## DISCUSSION

No. 03-2623
Neoprene Craftsmen v. N.L.R.B.

Looking initially at the prior Board order, that decision repeatedly references the fact that success sharing was the only change made to employment terms at the Louisville plant.[1] *See Dupont Dow Elastomers*, 332 NLRB at 1074. Likewise, our decision affirming the judgment of the Board, while mentioning the addition of the success sharing program repeatedly, fails to discuss any of the other unilateral changes that the Union claims require a monetary remedy. *See Dupont Dow Elastomers, Inc.*, 296 F.3d at 501-02.

Nonetheless, the Union argues that: (1) although success sharing was the only announced unilateral change made by DDE, the evidence introduced in the proceedings below unmistakably shows that DDE also instituted numerous other unilateral changes that were unannounced; (2) it was not required to litigate the remedy at the unfair labor practices hearing; and (3) it was not required to enumerate the exact relief requested in its complaint and, in any event, the complaint did set out monetary losses such as discontinued overtime.

As to the first and third arguments, the Union correctly points out that it introduced an assortment of evidence at the unfair labor practices hearing concerning a number of other unilateral changes by DDE and also specified in its complaint specific losses resulting from those alleged changes. However, as detailed above, the Board barely mentions these unilateral changes in its decision and, in fact, repeatedly emphasizes that DDE "announced no new terms and conditions of

---

[1]The Board does mention the loss of bidding and bumping rights (a unilateral change alleged by the Union) at the outset of its opinion; nevertheless, it is not revisited and plays no role in the ultimate decision. *See Dupont Dow Elastomers*, 332 NLRB at 1072. The Board also notes several unilateral changes instituted by DDE at a second facility. 332 NLRB at 1072-73; *see also Dupont Dow Elastomers*, 296 F.3d at 499. Because this appeal concerns only the Louisville facility, these noted changes are immaterial to its resolution.

employment other than the success sharing bonus plan." *Dupont Dow Elastomers*, 332 NLRB at 1074. Despite the Board's inattention to these other alleged unilateral changes, the Union chose not to contest those omissions in the subsequent proceedings before this court. In fact, the Union opted not to appeal the initial decision by the Board. *See Dupont Dow Elastomers*, 296 F.3d at 495.

The Union responds with its other primary argument: that it was not required to litigate the remedy during the unfair labor practices hearing. While the Union correctly notes that the issue of remedy is often appropriately resolved during compliance proceedings, *see Sure-Tan, Inc.*, 467 U.S. at 900-01, its argument misses the mark. Despite the validity of bifurcated proceedings in which the unfair labor practice allegation and remedy are separately litigated, "the Board's established policy does not permit subsequent unfair labor practices to be litigated during the compliance stage of the proceedings." *Flambeau Airmold Corp.*, 337 NLRB 1025, 1025 (2002). Therefore, all specific unfair labor practices claims for which remedial relief is sought must be litigated on the merits during the initial Board proceeding.

In the end, the Board did not abuse its discretion in ruling that the unilateral changes made by DDE for which the Union seeks monetary relief were neither litigated fully in the original Board proceeding nor encompassed within the scope of the prior order. As detailed above, the prior order almost completely omits mention of any unilateral changes imposed by DDE, with the exception of success sharing. Moreover, in portions of the prior order, the Board states specifically that DDE neither announced nor implemented any changes other than success sharing at the Louisville plant prior to beginning operations. *Dupont Dow Elastomers*, 332 NLRB at 1074. Given that the prior Board order paid, at best, minimal attention to these issues, the Board's interpretation of the previous

order as not covering the various unlawful unilateral changes asserted by the Union is supported by the record. Lastly, this conclusion neither implies that the unilateral changes the Union asserts did not occur nor that these changes did not constitute unfair labor practices. We are simply stating that, irrespective of the merit of those allegations, the Board did not abuse its discretion when deciding that those claims had not been previously litigated.

Turning to the validity of the Board's remedial order itself, recognizing our deferential standard of review, the Board's decision to issue only a cease and desist order was well within its discretion. Under the Board's reading of the prior order, the only unilateral change established with respect to the Louisville plant was the addition of a success sharing program. Since the Union does not argue that the success sharing resulted in any loss of pay or benefits, there is no basis upon which it may claim either backpay or other monetary award. Furthermore, the Union identifies no policy of the NLRA with which this order conflicts. Accordingly, the remedial order was not an abuse of discretion.

The petition is DENIED.